## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLEY O'DONNELL, | : | **CIVIL NO.: 1:16-CV-01149** |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| | : | |
| SUPERINTENDENT ROBERT | : | |
| SMITH, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

This prisoner civil rights case comes before us on a motion to dismiss the amended Eighth Amendment claim brought against defendant Correct Care Solutions ("Correct Care").  For the reasons that follow, we recommend that the motion to dismiss be denied.

### II. Relevant Procedural History.

The plaintiff, Kelley O'Donnell ("O'Donnell"), is an inmate incarcerated at SCI Muncy.  O'Donnell commenced this action as a *pro se* plaintiff by filing a complaint on June 15, 2016 (*doc. 1*) followed by an amended complaint (*doc. 16*) and a second amended complaint (*doc. 22*).  On October 12, 2016, we granted

O'Donnell's motion for the appointment of counsel and appointed attorney Will

W. Sachse ("Sachse") to represent her. *Doc. 24*. O'Donnell then filed an amended

complaint through counsel on April 14, 2017 (*doc. 38*) and a second amended

complaint through counsel on October 10, 2017 (*doc. 50*). This second amended

complaint through counsel remains the operative complaint in this case. For the

sake of clarity, we will refer to it as the second amended complaint for the

remainder of this opinion.

In her second amended complaint, O'Donnell raises claims for violation of

her Eighth and Fourteenth Amendment rights against Judith Rowe, corrections

officers Stettler and Raup, Captain Waltman, Superintendent Smith, Correct Care,

and Dr. Cynthia Freeland ("Freeland").[1] *Doc. 50* at 9-11. On October 24, 2017,

Rowe, Raup, Smith, Stettler, and Waltman (collectively referred to as the

Commonwealth Defendants) filed an answer to the second amended complaint.

*Doc. 59*. Defendants Correct Care and Freeland (collectively referred to as the

Medical Defendants) filed a motion to dismiss the claims against them on

---

[1] We note that during a conference call on December 19, 2018, O'Donnell
repeatedly referred to her ADA claim. However, O'Donnell does not raise an
ADA claim in her second amended complaint; she only raises constitutional claims
under the Eighth and Fourteenth Amendments. *See doc. 50* at 9-11. From our
review of the record, it appears that O'Donnell raised ADA claims in her three
complaints filed before she obtained counsel (*see docs. 1, 16, 22*), but did not do so
in either one of her complaints filed through counsel. *See docs. 38, 50.*
Accordingly, because she does not raise the claim in the most recent version of her
complaint, O'Donnell's ADA claim is waived.

November 9, 2017 along with a supporting brief. *Docs. 61-62*. The Medical

Defendants argued the claims against Correct Care should be dismissed because

they were based on a *respondeat superior* theory, which could not be the basis for

liability under 42 U.S.C. § 1983. *Doc. 62* at 3. The Medical Defendants further

argued the claims against Freeland should be dismissed because the facts as

alleged in the second amended complaint suggested only that O'Donnell had a

disagreement with Freeland on the proper course of medical treatment. *Id.* at 5.

On February 16, 2018, we granted Sachse's motion to withdraw as

O'Donnell's counsel. *Doc. 72*. After a subsequent attempt to secure new counsel

for O'Donnell proved unsuccessful (*see docs. 75, 77*), we issued a report and

recommendation addressing the Medical Defendants' motion to dismiss. *Doc. 90*.

We concluded that O'Donnell had stated an Eighth Amendment claim upon which

relief could be granted against Freeland because she alleged that Freeland had

denied her medication based on non-medical reasons. *Id.* at 15-16. We concluded

that O'Donnell had not stated an Eighth Amendment claim upon which relief could

be granted against Correct Care because O'Donnell had only alleged liability

against Correct Care based on its acquiescence to the decisions of the medical staff

at SCI Muncy and had not alleged "a policy or custom of requiring (or otherwise

allowing) its medical professionals to defer to non-medical prison staff." *Id.* at 18.

We accordingly recommended that the motion to dismiss be granted as to the

claims against Correct Care but denied as to the claims against Freeland. *Id.* at 20. We further recommended that O'Donnell be given leave to amend her claim against Correct Care by filing an addendum to her complaint, but that the second amended complaint otherwise remain the operative complaint in the case. *Id.*

On September 14, 2018, O'Donnell filed an addendum to her complaint elaborating on her claim against Correct Care. *Doc. 108.* Ten days later, Chief Judge Conner issued an order adopting our report and recommendation. *Doc. 109* at 3. Accordingly, Chief Judge Conner dismissed without prejudice O'Donnell's claim against Correct Care and denied the motion to dismiss with regard to the claim against Freeland. *Id.* Chief Judge Conner also accepted O'Donnell's September 14, 2018 addendum as a supplement to the second amended complaint and remanded the matter to us for further pretrial management. *Id.*

On October 1, 2018, the Medical Defendants filed a motion to dismiss the amended claim against Correct Care, along with a brief in support of the motion. *Docs. 111-12.* The Medical Defendants argue that the claims against Correct Care as amended by O'Donnell's addendum should be dismissed because (a) the addendum does not comply with the limitations that we set in our previous report and recommendation and (b) the addendum fails to cure the deficiencies that previously led the court to dismiss the claim against Correct Care. *Doc. 112* at 3.

On December 7, 2018, following a conference with the parties, we issued an order appointing attorney Angus R. Love to represent O'Donnell. *Doc. 134*. We then conducted a status conference with the parties on December 19, 2018, after which we set a schedule for the parties to discuss the possibility of settlement. *Doc. 140*. On December 26, 2018, we issued an order staying all deadlines in the case in light of the ongoing settlement negotiations. *Doc. 141*. The parties then filed a joint status report on January 21, 2019, informing the court that settlement was unlikely at that time. *Doc. 142*. On January 24, 2019, we issued an order lifting the stay of the case and requiring O'Donnell to file a brief in opposition to the Medical Defendants' motion to dismiss. *Doc. 143*.

O'Donnell filed a brief in opposition to the Medical Defendants' motion on February 25, 2019. *Doc. 144*. O'Donnell argues that she has stated a claim upon which relief can be granted against Correct Care because she has alleged (a) that Correct Care "refused to provide treatment for pain arising out of her diagnosed conditions" and (b) that Correct Care had a policy "to deny [O'Donnell] treatment for [] serious medical needs because of non-medical reasons that seek to cut costs by refusing to provide outside consults or to deny [O'Donnell] treatment for non-medical reasons." *Id.* at 6, 9. O'Donnell further argues that the addendum complied with the requirements set out in our previous report and recommendation because any additional facts alleged were for the sole purpose of showing why she

5

had an Eighth Amendment claim upon which relief could be granted against Correct Care. *Id.* at 13. The Medical Defendants filed a reply brief on March 12, 2019, in which they argue that O'Donnell's addendum and subsequent brief are "wholly speculative and amount to mere conclusions of any policy or custom of deliberate indifference maintained by [Correct Care]." *Doc. 145* at 3.

## III. Motion to Dismiss and Pleading Standards.

A federal court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

*Twombly*, 550 U.S. at 555).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding whether to dismiss a case for failure to state a claim upon which relief can be granted, a federal court "must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party." *Krieger v. Bank of America*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  In practice, this leads to a three-part standard:

> To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must: "First, take note of the elements a plaintiff must plead to state a claim.  Second, identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and alterations omitted) (quoting *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

Complaints brought *pro se* are afforded more leeway than those drafted by attorneys.  In determining whether to dismiss a complaint brought by a *pro se* litigant, a federal district court is "required to interpret the *pro se* complaint liberally."  *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (2007).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Factual Allegations Against Correct Care.

In accordance with the standards governing motions to dismiss, the following facts are taken from O'Donnell's second amended complaint and her addendum to that complaint and are accepted as true for the purposes of deciding the motion to dismiss.  Because the motion only seeks dismissal of O'Donnell's claim against Correct Care, we only recite facts concerning that claim.  In addition, we liberally construe the allegations made in O'Donnell's addendum because that document was filed at a time when she did not have counsel.

Correct Care is a for-profit health care provider incorporated in Kansas and located in Pennsylvania.  *Doc. 50* ¶ 15.  Beginning in 2016, Correct Care provided medical care to inmates at SCI Muncy through a contract with the Pennsylvania

Department of Corrections ("DOC").  *Id.* ¶ 16.  Correct Care began employing

Freeland as a physician at SCI Muncy in 2016.  *Id.* ¶¶ 18-19.

Because of longstanding injuries and medical conditions, O'Donnell has

been prescribed heavy pain medication, including morphine, since approximately

2005.  *Id.* ¶ 51.  In December 2016, Freeland discontinued O'Donnell's morphine

prescription at the direction of Captain Waltman.  *Id.* ¶ 52.  Correct Care was

aware of O'Donnell's need for treatment and had not concluded that she no longer

needed medication.  *Id.* ¶ 54.

On August 16, 2018, O'Donnell was seen by regional medical director Dr.

Jacques LeClerc ("LeClerc").  *Doc. 108* at 2.  LeClerc refused to refer O'Donnell

to a neurosurgeon, stating that he was on the approval committee for such referrals

and that her referral would not be approved.  *Id.*  Instead of referring her to a

neurosurgeon, LeClerc increased her Lyrica prescription to 300 mg twice a day.

*Id.*  O'Donnell states that Correct Care maintains policies, customs, and practices

to intentionally cut costs by prescribing medication and wheelchairs instead of

more expensive medical care.  *Id.*

**V. Discussion.**

O'Donnell's claim against Correct Care alleges a violation of her rights under the Eighth Amendment and is therefore governed by 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983.

"A plaintiff seeking relief under 42 U.S.C. § 1983 must demonstrate 'that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'" *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). "Section 1983 is not a source of substantive rights but rather 'a mechanism to vindicate rights afforded by the Constitution or a federal statute.'" *Barna v. Bd. of Sch. Dirs. Of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Black v. Montgomery*, 835 F.3d 358, 364 (3d Cir. 2016)).

Liability in a § 1983 or a *Bivens* action results when a defendant is personally involved in the wrongful conduct. *Chavarriaga v. N.J. Dep't of Corrs.*,

806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "[A] plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (emphasis in original) (quoting *Iqbal*, 556 U.S. at 676).  A defendant cannot be held liable based on a theory of *respondeat superior. Id.*

O'Donnell's claim alleges a violation of the Eighth Amendment, which "prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs."  *Palakovic*, 854 F.3d at 227 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).  To be held liable, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

A private corporation providing medical services in a state prison "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability."  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d

575, 583 (3d Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).   "To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic*, 854 F.3d at 232 (citing *Natale*, 318 F.3d at 583-84).

"Policy is made when a decisionmaker possessing final authority to establish . . . policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).   "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480).   "Custom may also be established by evidence of knowledge and acquiescence." *Id.* (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

Here, O'Donnell argues that her claim against Correct Care should survive the motion to dismiss because she has pleaded that Correct Care has a policy of denying her treatment for her serious medical needs based on non-medical reasons. *Doc. 144* at 10.  The Medical Defendants argue that O'Donnell's argument is speculative and amounts to a mere conclusion that a policy exists. *Doc. 145* at 3.

A denial of medical care based on a non-medical factor such as cost may violate the Eighth Amendment. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011); *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Nevertheless, a "naked assertion" that defendants considered cost in making a medical decision is insufficient to state a claim for a violation of the Eighth Amendment, "as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674 (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Thus, a conclusory statement that a corporation had a policy of cutting costs is insufficient to state a claim for liability under the Eighth Amendment. *Id.* Similarly, an allegation that a corporation considered costs in making medical decisions is not by itself sufficient to state a claim. *See, e.g.*, *Lanza v. Moclock*, No. 3:17-CV-01318, 2018 WL 3060030, at *9 (M.D. Pa. June 20, 2018); *Viera v. Williams*, No. 1:13-CV-02424, 2015 WL 5913193, at *5 (M.D. Pa. Oct. 7, 2015); *McCabe v. Pa. Dept. of Corrs.*, No. 1:12-CV-00293, 2012 WL 6055024, at *7 (M.D. Pa. Dec. 5, 2012). To state a claim, a plaintiff must plead facts showing (1) the existence of a cost-cutting policy; (2) that the policy affected the relevant medical treatment; and (3) that specific medical treatment was denied as a result of those policies. *Whitehurst v. Lackawanna Cty.*,

No. 3:17-CV-00903, 2018 WL 1899297, at *3 (M.D. Pa. Apr. 20, 2018) (citing *Winslow*, 406 F. App'x at 674).

Liberally construing O'Donnell's addendum as a supplement to the allegations she made in her second amended complaint, we find that she has pleaded an Eighth Amendment claim upon which relief can be granted against Correct Care. O'Donnell alleges the Correct Care has a policy of denying medical care to cut costs. *Doc. 108* at 2. She alleges that this policy directly affected her medical care and that she was denied medical care on two separate occasions because of the policy. *Doc. 50* ¶¶ 52-54; *doc. 108* at 2. Specifically, O'Donnell alleges that her morphine prescription was discontinued to save money and that she was not referred to a neurosurgeon to save money. *Id.* Such allegations are sufficient to state an Eighth Amendment claim against Correct Care at this stage of the litigation. *See, e.g.*, *Benussi v. Luzerne Cty.*, No. 3:17-CV-01668, 2018 WL 4110559, at *5 (M.D. Pa. Aug. 29, 2018) ("While a 'naked assertion' that the County Defendants 'considered cost' in treating Benussi's injury would not 'suffice to state a claim for deliberate indifference,' the allegation that the County Defendants maintained a policy of denying necessary medical care because of cost does suffice." (quoting *Winslow*, 406 F. App'x at 674)); *Ozoroski v. Maue*, No. 1:08-CV-00082, 2009 WL 414272, at *9 (M.D. Pa. Feb. 18, 2009) (finding that plaintiff stated a claim upon which relief could be granted where he alleged that

corporation had a policy of denying requests for outside surgery in order to cut costs).

## VI. Recommendation.

Because we conclude that O'Donnell has pleaded an Eighth Amendment claim upon which relief can be granted against Correct Care, we recommend that the Medical Defendants' motion to dismiss (*doc. 111*) be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **29th** day of **April, 2019**.

***S/Susan E. Schwab***
Susan E. Schwab
Chief United States Magistrate Judge